IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WILLIAM T. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-787-GMS |
| | ) | |
| JANE BRADY, STAN TAYLOR, | ) | JURY TRIAL DEMANDED |
| REBECCA MCBRIDE | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION OF DEFENDANT JANE BRADY TO DISMISS PLAINTIFF'S COMPLAINT[1]

Defendant, Jane Brady, by and through undersigned counsel, respectfully moves this Honorable Court to enter an Order, pursuant to Rules 12(b)(1) and 12 (b)(6) of the Federal Rules of Civil Procedure, dismissing Plaintiff's Complaint with prejudice. In support thereof, Defendant Brady represents as follows:

1. William Smith ("Plaintiff") filed a Complaint pursuant to 42 *U.S.C.* § 1983 and a Motion to Proceed *In Forma Pauperis* on December 22, 2006. (D.I. 1, 2). Plaintiff named former Attorney General Jane Brady, former Commissioner of Corrections Stan Taylor, and Department of Correction ("DOC") employee, Rebecca McBride as defendants in the action. The Court issued a service Order on February 8, 2007. Service was executed for Jane Brady ("Defendant Brady") on May 11, 2007. (D.I. 8).

2. Plaintiff's Complaint contains allegations against Defendant Brady in paragraph No. 1 under "Statement of Claim." Specifically, Plaintiff alleges that his due

---

[1] Moving defendant waives the right to file an Opening Brief and submits this Motion in lieu thereof pursuant to Local Rule 7.1.2. Moving defendant reserves the right to file a Reply Brief.

process rights were violated by Defendant Brady because he was denied an enhanced penalty hearing before sentencing. Plaintiff alleges this "stripped [him] of his liberty to early freedom ad a lengthy 33 year sentence with 23 years mandatory." (D.I. 2 at p. 3). The Complaint contains no further allegations against Defendant Brady. The following are Defendant Brady's arguments in support of dismissal of the Complaint.

3.   In deciding a motion to dismiss, the Court should dismiss the complaint "only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint. *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3d Cir. 1998). Though *pro se* pleadings are entitled to leniency, such pleadings must still place a defendant on notice as to what wrong he has supposedly committed. *Riley v. Jeffes*, 777 F.2d 143, 148 (3d Cir. 1985) ("[I]f a plaintiff presents only vague and conclusory allegations, the complaint should be dismissed.").

    **I.**    **Plaintiff Has No Cause of Action to Challenge the Consitutionality of His Criminal Sentence Under 42 *U.S.C.* § 1983 Because His Sentence Has Not Been Invalidated.**

4.   Plaintiff's claims against Defendant Brady are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Plaintiff is precluded by *Heck* from bringing an action for damages in federal court pursuant to 42 *U.S.C.* § 1983 when "a judgment in favor of the defendant would necessarily imply the invalidity of his conviction or sentence." *Heck*, 512 at 486-87. Claims for damages pursuant to § 1983 alleging unconstitutional conviction or imprisonment must be dismissed unless the plaintiff can prove that the conviction was "reversed on direct appeal, expunged by executive order, declared invalid

by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of writ of habeas corpus." *Id.*

5.     Plaintiff's conviction has not been overturned, reversed, expunged, or called into question. On the contrary, Plaintiff's conviction and sentence has been repeatedly upheld beginning with his direct appeal of his criminal conviction. *Smith v. State*, 582 A.2d 936 (Del. 1989). Plaintiff's first application for postconviction relief pursuant to Rule 61 of the Superior Court Rules of Civil Procedure was denied and that denial was affirmed on appeal to the Delaware Supreme Court. *Smith v. State*, 623 A.2d 1143 (Del. 1993); *State v. Smith*, 1992 WL 423845 (Del. Super. Ct. 1992)(Exhibit "A"). Plaintiff's second application for postconviction relief pursuant to Rule 61 was also denied in the Superior Court and that denial was also affirmed on appeal to the Supreme Court. *Smith v. State*, 670 A.2d 1340 (Del. 1995). Plaintiff's Motion for Correction of Sentence pursuant to Superior Court Civil Rule 35(a) was denied by the Superior Court and that denial was affirmed on appeal to the Supreme Court. *Smith v. State*, 738 A.2d 239 (Del. 1999). Finally, Plaintiff's habeas petition in the District Court for the District of Delaware was dismissed on September 4, 2002. *Smith v. Snyder*, 2002 WL 31005858 (D.Del.)(Exhibit "B").

6.     Plaintiff asserts in his Complaint that the "District Court Judge remanded [his] case to Superior Court for correction." (D.I. 2 at p.2). Plaintiff does not cite to any case or provide any date for this remand order. Counsel for Defendants has searched for such an order, and despite discovery of the extensive history documented above, has been unable to find any District Court order remanding Plaintiff's case for correction.

7.     Plaintiff is challenging his sentence and a determination by this Court that

3

Plaintiff was denied due process during his sentencing phase would imply that his subsequent sentence was invalid. Absent a showing that his conviction or sentence has been invalidated, Plaintiff's sole remedy for such a challenge is by way of habeas corpus. *Preiser v. Rodriquez*, 411 U.S. 475, 93 (1973). Plaintiff has no cause of action under § 1983 and Plaintiff's due process claim against Defendant Brady must be dismissed for failure to state a claim.

      **II.    The Plaintiff Fails to Allege Any Personal Involvement by Defendant Brady and his Claim Must Fail Under § 1983.**

8.    Regardless of the type of § 1983 claim, the plaintiff must show personal involvement by the defendant to succeed. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). The allegations of personal involvement must also be pled with particularity, "stating the time, place, and persons responsible for the violations." *Boykins v. Ambridge Area School Dist.*, 621 F.2d 75, 80 (3rd Cir. 1980). Plaintiff can not recover against a state defendant unless he can show some causal connection between that state defendant and the alleged wrongdoing. *Id*.

9.    Plaintiff's complaint fails to assert any personal involvement by Defendant Brady.[2] Plaintiff alleges that Defendant Brady denied him of his "enhance penalty hearing before sentencing," but he does not state a causal connection between this alleged denial and Defendant Brady. While an Attorney General supervises prosecutors and makes determinations as to criminal charges, a determination of proceedings for sentencing would be at the discretion of the presiding judge and the not the Attorney General.

---

[2] It is noteworthy that Jane Brady was not the Attorney General when Plaintiff was sentenced. Plaintiff was sentenced in 1988. At this time, the Office of Attorney General was held by Charles M. Oberly, III. Defendant liberally construes the Complaint and presumes Plaintiff intended to bring the claim against the Office of Attorney General.

10.     A liberal reading of the Complaint could lead to the assumption that Plaintiff is attempting to name Defendant Brady because of her supervisory position as Attorney General; this theory of liability would be based on *respondeat superior*. It is well established that the theories of *respondeat superior* and vicarious liability are not acceptable bases for liability under § 1983. *See, e.g., Polk County v. Dodson*, 454 U.S. 312, 325 (1981).

11.     Without identifying how she participated in or personally directed the events which Plaintiff claims deprived him of constitutional rights, Defendant Brady cannot be held liable. *Gay v. Petsock*, 917 F.2d 768, 771 (3d Cir. 1990); *Rode, supra*. Plaintiff's Complaint fails to sufficiently allege personal involvement by Defendant Brady and liability in a § 1983 action can not be predicated on *respondeat superior*. Plaintiff's claims against Defendant Brady must be dismissed for failure to state a claim upon which relief can be granted.

### III.    Defendant Brady is entitled to Absolute Immunity for Claims Brought Against Her in Her Official Capacity.

12.     Even assuming *arguendo* that Plaintiff could prove personal involvement by Defendant Brady, actions undertaken by an Attorney General in his/her official capacity to initiate and prosecute criminal charges enjoy absolute immunity under state law pursuant to 10 *Del. C.* § 4001. This immunity extends to federal law claims initiated pursuant to 42 *U.S.C.* § 1983. *Weber v. Oberly*, 571 A.2d 788, (Del. 1989) (citing *Imbler v. Pachtman*, 424 U.S. 409, 424 (1976)).

13.     Decisions made by the Attorney General with respect to the prosecution of the criminal charges against Plaintiff were made in an official capacity as Attorney General. An Attorney General is absolutely immune from suits brought through 42

*U.S.C.* § 1983 for such decisions. Plaintiff's actions against Defendant Brady must be dismissed.

    **IV.   Defendant Brady is Entitled to Eleventh Amendment Immunity and the Claims Should Be Dismissed For Lack of Subject Matter Jurisdiction Pursuant to Federal Rule of Civil Procedure 12(B)(1).**

    14.    "The Eleventh Amendment limits federal judicial power to entertain lawsuits against a State and, in the absence of congressional abrogation or consent, a suit against a state agency is proscribed." *Neeley v. Samis*, 183 F. Supp. 2d 672, 678 (D. Del. 2002) (quoting *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 98-100, (1984)). The United States Congress can waive the states' sovereign immunity, and therefore, their Eleventh Amendment immunity through the Fourteenth Amendment. However, only a clear indication of Congress' intent to waive the states' immunity will produce this result. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55-56 (1996). No such clear intent can be seen in 42 *U.S.C.* § 1983. In fact, a review of the statute demonstrates that Congress did not intend to waive the states' immunity. The statute facially allows suits only to be brought against "persons." 42 *U.S.C.* § 1983.

    15.    Plaintiff does not specify whether he names Defendant Brady in her official or individual capacity. However, inclusion of her "Attorney General" title compounded with claims that relate to his criminal sentencing indicate that he is naming her in her official capacity. As Attorney General, she is a state official acting under color of state law. A suit against Defendant Brady in her official capacity as Attorney General is treated as a suit against the State. In her official capacity, she is not a "person" for purposes of 42 *U.S.C.* § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

16.     Defendant Brady is entitled to Eleventh Amendment Immunity for claims brought against her in her official capacity as Attorney General of Delaware. The Federal District Court is without subject matter jurisdiction to hear Plaintiff's official-capacity claims against Defendant Brady and dismissal is appropriate.

**Conclusion**

17.     Plaintiff's Complaint fails to state a 42 *U.S.C.* § 1983 claim against Defendant Brady because his criminal sentence has not been invalidated. Even if Plaintiff did have a cause of action, his Complaint fails to allege the requisite personal involvement of Defendant Brady in the alleged denial of his enhanced penalty hearing. Further, even in Plaintiff had alleged personal involvement, Defendant Brady has absolute immunity protections and is further shielded from liability by the Eleventh Amendment.

**WHEREFORE**, for the foregoing reasons, Defendant Brady moves this Honorable Court to dismiss the claims against her with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**DEPARTMENT OF JUSTICE**
**STATE OF DELAWARE**

/s/ Stacey Xarhoulakos_____
Stacey Xarhoulakos, # 4667
Deputy Attorney General
Department of Justice
820 N. French Street, 6th Floor
Wilmington, De 19801
(302) 577-8400

Dated: May 31, 2007                    Attorney for Defendant Jane Brady

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WILLIAM T. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-787-GMS |
| | ) | |
| JANE BRADY, STAN TAYLOR, | ) | |
| REBECCA MCBRIDE | ) | |
| | ) | |
| Defendants. | ) | |

## **ORDER**

Upon Defendant Jane Brady's Motion To Dismiss pursuant to Federal Rules of Civil Procedure 12 (b)(1) and 12(b)(6) (the "Motion"); and it appearing that good and sufficient notice of the Motion has been given; and after due deliberation thereon:

**IT IS HEREBY ORDERED** as follows:

1. The Motion is **GRANTED**.

2. The Complaint filed in the above-captioned action is **DISMISSED WITH PREJUDICE** as to Defendant Jane Brady.

SO ORDERED this _____ day of _____, 2007.

_____
The Honorable
United States District Court

**CERTIFICATE OF SERVICE**

I hereby certify that on May 31, 2007, I electronically filed *Motion to Dismiss of Defendant Jane Brady* with the Clerk of Court using CM/ECF.  I hereby certify that on May 31, 2007, I have mailed by United States Postal Service, the document to the following non-registered participant:

William T. Smith, III
108 Carvel Dr., Apt. # 2
New Castle, DE 19720
*Pro Se*

/s/ Stacey Xarhoulakos
Deputy Attorney General
Department of Justice
820 N. French St., 6th Floor
Wilmington, DE 19801
(302) 577-8400
stacey.xarhoulakos@state.de.us

# EXHIBIT A

Westlaw.

Not Reported in A.2d                                                                                    Page 1

Not Reported in A.2d, 1992 WL 423845 (Del.Super.)
(Cite as: Not Reported in A.2d)

**H**
State v. Smith
Del.Super.,1992.
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
  Superior Court of Delaware, New Castle County.
          STATE of Delaware
                  v.
        William T. SMITH, Defendant.
         Submitted: Sept. 25, 1992.
         Decided: Dec. 18, 1992.

Upon defendant's pro se motion for post-conviction relief. Denied.

Eugene M. Hall, State Prosecutor, Department of Justice, Wilmington, for State.
William T. Smith, pro se.

             MEMORANDUM OPINION
GEBELEIN, Judge.
*1 Defendant William T. Smith was convicted on charges of Trafficking in Cocaine, Possession with Intent to Deliver a Controlled Substance, and Conspiracy in the Second Degree, following a jury trial ending on October 12, 1988. On appeal to the Supreme Court of the State of Delaware, his convictions were affirmed by order dated September 26, 1990. Defendant has now moved for Postconviction Relief pursuant to Rule 61 of the Superior Court Rules of Civil Procedure. For the reasons set forth herein, the motion is DENIED.

The nature of the case against the defendant was that while in prison, he arranged a drug transaction with undercover police officers. The evidence at trial consisted primarily of the testimony of a number of people who worked for law enforcement agencies. Three were women who had played the role of "Debbie," who was supposed to be the girlfriend of another inmate at the prison, in telephone conversations with the defendant. Some of these conversations were taped, and these tapes were introduced into evidence at trial.

In support of his motion, Defendant cites a number of grounds on which he claims he is entitled to relief. These can be divided into two broad categories: first, claims related to Defendant's Sixth Amendment right to counsel; and second, claims related to the use of a confidential informant by the police in developing the case against the defendant.

As regards the right to counsel claim, Defendant argues that a number of actions taken by and with respect to his attorney denied him effective assistance of counsel as required by *Strickland v. Washington*, 466 U.S. 668 (1984). First, he argues that he should have been permitted to change counsel and be granted a continuance on the morning of trial because he and his attorney were unable to communicate and could not agree on a defense to the charges against him.[FN1] Second, he argues that his attorney's representation of him was constitutionally inadequate in three ways: first, he broadly asserts a "lack of adequate representation of defendant in an adversarial manner."; second, he claims that incomplete tapes and edited transcripts of wiretapped conversations were admitted into evidence without proper foundation, and "without explanation or rebuttal;" and third, he claims that his attorney failed to litigate a motion to suppress in the case. Defendant asserts that these facts denied him effective assistance of counsel and resulted in unfair prejudice against him.

However, Defendant cannot prevail on an ineffective assistance of counsel claim based on the foregoing, because he has made no showing that his counsel's representation of him was outside the wide range of activity which falls within the realm of effective assistance of counsel. *Strickland, supra.*, 466 U.S. at 689. At the heart of this argument is the fact that the defendant and his counsel were unable to agree on the appropriate strategy for trial. Although the defendant claims that he was

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                    Page 2
Not Reported in A.2d, 1992 WL 423845 (Del.Super.)
(Cite as: Not Reported in A.2d)

prejudiced by his inability to communicate with his attorney and by her refusal to present a defense of entrapment, the facts of the case indicate that the strategic decision was within the realm of reasonable strategies. Additionally, regardless of the nature of the communications between attorney and client, a review of the entire transcript demonstrates that the defendant's attorney effectively cross-examined the State's witnesses. Although the defense elected not to present a case in its own behalf, this decision was, again, not outside of the realm of reasonable trial strategy in the context of the facts elicited during the State's case. Finally, before the trial began, the Court conducted a prolonged inquiry into the problems between the defendant and his attorney, and concluded that it would not be prejudicial to the defendant to require him to proceed to trial as scheduled. Given these facts, the Court gave the defendant two alternatives: he could either proceed with his previously-assigned counsel, or he could proceed without counsel. The defendant elected to proceed with counsel.

*2 However, the defendant argues that he should have been permitted to continue the trial and have new counsel appointed for him. The right to counsel does not encompass the right to any particular attorney, especially where the defendant is not paying the bill for the attorney. *Shipley v. State,* Del.Supr., 570 A.2d 1159, 1171 (1990) (citing *Wheat v. United States,* 486 U.S. 153, 108 S.Ct. 1692, 1697 (1988)). The trial judge has wide latitude in making decisions regarding whether to grant a defendant's request for a change in court-appointed counsel, as well as in making decisions regarding scheduling of cases. *See Smith v. State,* Del.Supr., No. 84, 1989, (Order), (September 26, 1990). In this case, the Court notes that the trial had already been rescheduled several times, that the defendant had already changed attorneys once, and that defendant had apparently had difficulties in his relationship with his previous counsel as well. With these facts in mind, there is no reason for the Court to believe that the defendant would have gotten along any better with any other attorneys. Furthermore, the mere fact that a defendant does not like his attorney is not grounds for believing that the attorney's representation of the defendant is inadequate. Attorneys have an ethical duty to diligently pursue their clients' cases regardless of personal feelings, and absent a showing to the contrary, the Court must assume that the attorney has discharged this duty.[FN2] Therefore, there was no reason to continue the trial or to appoint alternate counsel to represent the defendant.

Defendant's claims regarding counsel's activities on his behalf are equally without merit. The first assertion, as noted above, is disproved by the transcript of the trial, which demonstrates clearly that defense counsel did represent the defendant "in an adversarial manner" by cross-examining the State's witnesses thoroughly.[FN3] The claims regarding the wiretaps are also unsupported by the record, since the tapes were authenticated by participants in each of the conversations and the missing portions were thoroughly discussed on both direct and cross-examination. The jury was also instructed that the tapes, not the transcripts, were the best evidence of what was said in the conversations they represented. Trial transcript at 53.

The final ineffective assistance of counsel claim involves a motion to suppress which the defendant claims his attorney failed to litigate. The motion was aimed at suppression of the wiretaps placed on the telephone conversations between "Debbie" and the defendant. However, neither the instant motion nor the original motion indicates the grounds on which the defendant sought to have the tapes suppressed. The motion was, as the defendant claims, not renewed at trial. However, contrary to defendant's assertion, he did not bring out this failure to litigate the motion during the colloquy at trial. He made a broad claim that his attorney did not respond to his requests that she file motions on his behalf. This general assertion can hardly be viewed as notice that there was an outstanding motion to suppress. Granting that the motion was in fact outstanding at the time of trial, the fact is that the transcript indicates that the defendant voluntarily engaged in the conversations on the tapes. Any conceivable grounds on which the motion might have been predicated would be tenuous at best, and therefore unlikely to result in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Page 3
Not Reported in A.2d, 1992 WL 423845 (Del.Super.)
(Cite as: Not Reported in A.2d)

the outcome the defendant was seeking, namely, suppression of the tapes. Since the failure to litigate the motion did not materially affect the evidence admitted at trial, the failure to rule on it could not have prejudiced the defendant. As noted above, the defendant would have to demonstrate prejudice in order to prevail on an ineffective assistance of counsel claim. *Strickland, supra.*, 466 U.S. at 689.

*3 Defendant's second asserted set of grounds for relief are equally without merit. The claims regarding the use of the confidential informant fall into two broad categories: first, Defendant asserts that a Delaware Department of Corrections regulation prohibits the use of inmates as confidential informants and that therefore his conviction based on the use of such an informant should be overturned as illegal; and second, Defendant asserts that he was prejudiced by the State's failure to provide him with a hearing under *Flowers v. State,* Del.Super., 316 A.2d 564, 568 (1973), to determine the identity and location of the confidential informant within the Department of Corrections.

In support of his claim that his conviction by the use of an inmate as a confidential informant was illegal, Defendant asserts that a Department of Corrections regulation "having the effect of a statute" prohibits the use of inmates as confidential informants. However, the defendant's reliance on this regulation in support of the instant motion is misplaced for at least two reasons. First, the regulation in question, Administrative Regulations of the Department of Corrections, Section 407, does not actually prohibit the use of such informants. Instead, it states that it is "opposed" to the use of inmates as confidential informants. The reasons enumerated for this position are described as follows:
1. It is illegal for a law enforcement agency to engage a person to perform an illegal act which is expected of some informers and agents.
2. Agreement by a corrections agency to an illegal act is contradictory to the purpose of correction (i.e. it cannot condone an illegal act while simultaneously trying to influence offenders to be law abiding.
3. It is unfair to subject anyone to the high risk of physical danger and emotional stress of being an informer.

These reasons for the Department's opposition to the use of inmates as informants are not implicated by the facts of the case *sub judice.* The regulation is clearly aimed at protecting inmates from the possibility that they will be coerced into acting as informants by the police, the courts, or any state agency. In the case *sub judice,* there is no indication in the record that the informant was recruited by the police, or by anyone else. Even if he were, that would not require the reversal of Defendant's conviction, since opposition to the use of informants is not equivalent to a prohibition of such activity.[FN4]

Even if the regulation did purport to prohibit the use of inmates as informants, the defendant would run into another difficulty with his claim that the violation of that regulation mandates a reversal of his conviction. Contrary to Defendant's assertion, regulations of any agency do not have the same force of law that a statute would have. The enabling statute, which authorizes the Department of Corrections to promulgate rules and regulations is 11 *Del.C.* § 6535. That statute, in its entirety, reads as follows:
*4 The Department [of Corrections] shall promulgate rules and regulations for the maintenance of good order and discipline in the facilities and institutions of the Department, including procedures for dealing with violations. A copy of such rules shall be provided to each inmate. There shall be a record of charges of infractions by inmates, any punishments imposed and of medical inspections made.

Nowhere does the statute give the rules and regulations promulgated thereunder the force of statutory authority. Standard rules of statutory construction require the assumption that since such authority was not specifically included in the statute, the Court must assume that the General Assembly intended to exclude it. *See* 73 Am.Jur.2d *Statutes* § 196 (1974) ( "No intent may be imputed to the legislature in the enactment of a law other than such as supported by the face of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                              Page 4
Not Reported in A.2d, 1992 WL 423845 (Del.Super.)
(Cite as: Not Reported in A.2d)

law itself."). Therefore, without specific authority from the General Assembly, this Court cannot give agency regulations the force of law. This means that the use of the confidential informant was not equivalent to a *per se* violation of Defendant's statutory rights, and that a violation of the regulation in question would not require that the defendant's conviction be overturned.

Defendant also cannot demonstrate any prejudice due to the lack of a *Flowers* hearing, since he admitted in Court that he knew the identity of the confidential informant. Trial transcript at 7, 12. There is no indication that he made any attempt to find the informant, even within the Department of Corrections, which would have been a likely place for him to start looking. The facts demonstrate that the defendant made no effort whatsoever to procure the testimony of the informant at trial, which he clearly could have done if he had believed that the testimony would have been beneficial to him in any way. The fact that the defense elected not to subpoena the informant was not due to any action or omission on the part of the State, and therefore does not warrant postconviction relief.

Thus the Defendant cannot prevail on his motion for postconviction relief, which is hereby DENIED.

IT IS SO ORDERED.

FN1. Specifically, Defendant seems most unhappy with his attorney's refusal to present an entrapment defense to the jury.

FN2. Defendant had previously filed a complaint with the Disciplinary Board regarding his attorney's representation of him. This complaint was dismissed by the Board as lacking merit before the case went to trial.

FN3. The Court notes that in order to prevail on an ineffective assistance of counsel claim, the defendant must demonstrate *specific* instances of prejudice due to attorney incompetence. Even were the assertion here discussed not so clearly refuted by the record, it is doubtful that it would be specific enough to carry an ineffective assistance of counsel claim.

FN4. Webster's Ninth New Collegiate Dictionary is instructive on the distinction between the terms "oppose" and "prohibit."
   "Oppose" is defined as "... to offer resistance to;" synonyms include "combat," "resist," "withstand," and "antagonize." "Prohibit," on the other hand, means "to forbid by authority" or "to prevent from doing something." Synonyms include "enjoin," "preclude," and "forbid."

Del.Super.,1992.
State v. Smith
Not Reported in A.2d, 1992 WL 423845 (Del.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2002 WL 31005858 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Smith v. Snyder
D.Del.,2002.
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
William T. SMITH III, Petitioner,
v.
Robert SNYDER, Warden, and Attorney General of the State of Delaware, Respondents.
**No. Civ.A. 00-807-GMS.**

Sept. 4, 2002.

After petitioner's state court convictions for trafficking in cocaine, possession of cocaine with intent to deliver, and conspiracy, were affirmed on direct appeal, petitioner sought federal habeas relief. The District Court, Sleet, J., held that: (1) filing date for petition was date that petitioner signed it; (2) limitations period accrued on date that petitioner's conviction became final, rather than date *Apprendi* was decided; and (3) limitations period was not statutorily or equitably tolled.

Petition dismissed.
West Headnotes
**[1] Habeas Corpus 197 ⇐603**

197 Habeas Corpus
　197III Jurisdiction, Proceedings, and Relief
　　197III(A) In General
　　　197k603 k. Laches or Delay. Most Cited Cases
Filing date for habeas petition, for purposes of determining timeliness, was date that petitioner signed it, absent evidence as to date that petitioner delivered it to prison officials for mailing. 28 U.S.C.A. §§ 2244(d)(1)(A), 2254.

**[2] Habeas Corpus 197 ⇐603**

197 Habeas Corpus
　197III Jurisdiction, Proceedings, and Relief
　　197III(A) In General
　　　197k603 k. Laches or Delay. Most Cited Cases
Limitations period for filing habeas petition asserting violation of rule of *Apprendi*, requiring any fact, other than fact of prior conviction, increasing penalty for crime beyond the statutory maximum, to be determined by jury beyond a reasonable doubt, accrued on date that petitioner's conviction became final, rather than date *Apprendi* was decided, since rule of *Apprendi* was not made retroactively applicable to cases on collateral review. 28 U.S.C.A. §§ 2244(d)(1)(C), 2254.

**[3] Habeas Corpus 197 ⇐603**

197 Habeas Corpus
　197III Jurisdiction, Proceedings, and Relief
　　197III(A) In General
　　　197k603 k. Laches or Delay. Most Cited Cases
Habeas petitioner's state court motion for correction of sentence did not toll one-year limitations period for filing habeas petition, under tolling provision of habeas statute, where motion for correction of sentence was not filed until after habeas limitations period expired. 28 U.S.C.A. §§ 2244(d)(2), 2254.

**[4] Habeas Corpus 197 ⇐603**

197 Habeas Corpus
　197III Jurisdiction, Proceedings, and Relief
　　197III(A) In General
　　　197k603 k. Laches or Delay. Most Cited Cases
Equitable tolling of one-year limitations period for filing habeas petition was not warranted, where petitioner failed to articulate any extraordinary circumstances that prevented him from filing his petition in timely manner. 28 U.S.C.A. §§ 2244(d)(2), 2254.

*MEMORANDUM AND ORDER*
SLEET, J.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 2

Not Reported in F.Supp.2d, 2002 WL 31005858 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

\*1 Following a jury trial in the Delaware Superior Court, William T. Smith III was convicted of trafficking in cocaine, possession of cocaine with intent to deliver, and conspiracy. He is currently serving his sentence at the Delaware Correctional Center in Smyrna, Delaware. Smith has now filed with the court a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. As explained below, the court will dismiss Smith's petition as time barred by the one-year period of limitation prescribed in 28 U.S.C. § 2244(d).

### I. BACKGROUND

In March 1987, Smith was an inmate at the Multi-Purpose Criminal Justice Facility in Wilmington, Delaware. Officials learned through a confidential informant that Smith was arranging illegal drug transactions from the facility. During a sting operation, Smith's accomplice purchased cocaine in Philadelphia, then sold it to undercover agents in Delaware. Based on his involvement in arranging the transaction, Smith was charged with trafficking in cocaine, possession of cocaine with intent to deliver, and second degree conspiracy.

On October 11, 1988, a jury in the Delaware Superior Court found Smith guilty as charged. The Superior Court (Gebelein, J.) sentenced Smith on February 13, 1989, to twenty-eight years in prison followed by twelve years probation. On direct appeal, the Delaware Supreme Court affirmed. *Smith v. State,* No. 84, 1989, 1990 WL 168245 (Del. Sept.26, 1990).

Smith then filed in the Superior Court two motions for postconviction relief pursuant to Rule 61 of the Superior Court Rules of Criminal Procedure. He filed his first Rule 61 motion on September 25, 1992, which was denied on December 18, 1992. The Delaware Supreme Court affirmed. *Smith v. State,* No. 33, 1993, 1993 WL 89783 (Del. Mar.18, 1993). Smith filed his second Rule 61 motion on March 13, 1995, which the Superior Court denied on March 17, 1995. Again the Delaware Supreme Court affirmed. *Smith v. State,* No. 246, 1995, 1995 WL 567059 (Del. Sept.13, 1995). Smith took no further action until April 9, 1998, when he filed in the Superior Court a motion for correction of sentence.[FN1] The Superior Court denied the motion on October 23, 1998, and the Delaware Supreme Court affirmed. *Smith v. State,* No. 501, 1998, 1999 WL 734772 (Del. Aug.31, 1999).

> FN1. Smith's motion for correction of sentence is dated April 9, 1998, but was not docketed in the Superior Court until September 2, 1998. The record does not explain the five-month discrepancy. For current purposes, the court assumes a filing date of April 9, 1998.

Smith has now filed the current petition for federal habeas corpus relief. In his petition, Smith raises the following claims for relief: (1) his convictions for trafficking and possession of cocaine were based on "non-existent" crimes, because his accomplice obtained cocaine from a source other than the one Smith provided; (2) the state courts wrongly rejected his constitutional challenges to the Delaware trafficking and possession statutes without conducting an evidentiary hearing; and (3) the Superior Court enhanced his sentence without allowing a jury to decide the facts for enhancement in violation of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). (D.I.1, 2.) The respondents argue that the petition is subject to a one-year period of limitation that expired before Smith filed it. Thus, they ask the court to dismiss the petition as time barred.

### II. DISCUSSION

#### A. One-Year Period of Limitation

\*2 In the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress amended the federal habeas statute by prescribing a one-year period of limitation for the filing of habeas petitions by state prisoners. *Stokes v. District Attorney of County of Philadelphia,* 247 F.3d 539, 541 (3d Cir.), *cert. denied,* 534 U.S. 959, 122 S.Ct. 364, 151 L.Ed.2d 276 (2001). Effective April 24, 1996, the AEDPA provides in relevant part:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 3

Not Reported in F.Supp.2d, 2002 WL 31005858 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -
(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; ... [or]
(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review ...

28 U.S.C. § 2244(d). In order to avoid any impermissible retroactive application of the one-year period of limitation, state prisoners whose convictions became final prior to the enactment of the AEDPA were allowed to file their habeas petitions under § 2244(d)(1)(A) no later than April 23, 1997. See Burns v. Morton, 134 F.3d 109, 111 (3d Cir.1998)(prohibiting dismissal of petitions filed on or before April 23, 1997, as untimely under § 2244(d)(1)(A)).

Smith's conviction became final for purposes of § 2244(d)(1)(A) before the AEDPA was enacted. The Delaware Supreme Court affirmed Smith's conviction and sentence on September 26, 1990. Smith was then allowed ninety days in which to file a petition for a writ of certiorari with the United States Supreme Court. See Supreme Court Rule 13.1. Although Smith did not file a petition with the United States Supreme Court, the ninety-day period in which he could have filed such a petition is encompassed within the meaning of "the conclusion of direct review or the expiration of the time for seeking such review," as set forth in § 2244(d)(1)(A). See Kapral v. United States, 166 F.3d 565, 576 (3d Cir.1999)(holding that on direct review, the limitation period of § 2244(d)(1)(A) begins to run at the expiration of the time for seeking review in the United States Supreme Court). Therefore, Smith's conviction became final on December 26, 1990, ninety days after the Delaware Supreme Court affirmed his conviction, and several years before the enactment of the AEDPA on April 24, 1996. Thus, he could have filed a timely habeas petition with this court not later than April 23, 1997. See Burns, 134 F.3d at 111.

[1] The court's docket reflects that Smith's habeas petition was filed on August 31, 2000. (D.I.1.) A pro se prisoner's habeas petition, however, is considered filed on the date he delivers it to prison officials for mailing to the district court, not on the date the court dockets it. Id. at 113. Smith has provided the court with no documentation establishing the date he delivered his petition to prison officials for mailing. The petition itself, however, is dated August 22, 2000. In the absence of proof respecting the date of delivery, the court deems Smith's petition filed on August 22, 2000, the date he signed it. See Eley v. Snyder, Civ. No. 00-34-GMS, 2002 WL 441325, *2 (D. Del. Mar 20, 2002). Notwithstanding, Smith's habeas petition was filed well beyond the April 23, 1997 deadline imposed under § 2244(d)(1)(A).

*3 Before concluding that Smith's petition is untimely, the court must determine whether it could be considered timely under § 2244(d)(1)(C). As described above, Smith alleges a violation of his rights under *Apprendi*. Decided on June 26, 2000, *Apprendi* holds that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. Obviously, Smith could not have pursued an *Apprendi* claim before the April 23, 1997 deadline. Thus, if his *Apprendi* claim falls within the scope of § 2244(d)(1)(C), the one-year period of limitation is measured from the date *Apprendi* was decided, not on the date Smith's conviction became final.

[2] By its terms, § 2244(d)(1)(C) applies only where a newly-recognized constitutional right "has been made retroactively applicable to cases on collateral review." 28 U.S.C. § 2244(d)(1)(C). Several courts of appeals have ruled that *Apprendi* does not apply retroactively to cases on collateral review. See *United States v. Sanchez-Cervantes*, 282 F.3d 664, 671 (9th Cir.2002); *McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir.2001), cert. denied, 536 U.S. 906, 122 S.Ct. 2362, 153 L.Ed.2d 183 (2002); *United States v. Moss*, 252 F.3d 993, 997 (8th Cir.2001), cert. denied, 534 U.S. 1097, 122 S.Ct. 848, 151 L.Ed.2d 725 (2002); *United States v. Sanders*, 247 F.3d 139, 146 (4th Cir.),

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 4

Not Reported in F.Supp.2d, 2002 WL 31005858 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

cert. denied, 534 U.S. 1032, 122 S.Ct. 573, 151 L.Ed.2d 445 (2001).[FN2] Based on these decisions, the court concludes that § 2244(d)(1)(C) does not apply because *Apprendi* has not "been made retroactively applicable to cases on collateral review." Accordingly, the one-year period of limitation must be counted from the date Smith's conviction became final, not from the date *Apprendi* was decided.

> FN2. The court is aware that the Third Circuit has ruled that the United States Supreme Court has not made *Apprendi* retroactively applicable to cases on collateral review. *In re Turner*, 267 F.3d 225, 229 (3d Cir.2001). *Turner*, however, does not address whether *Apprendi* is retroactively applicable to cases on collateral review for purposes of § 2244(d)(1)(C).

For the reasons described, the court finds that Smith's petition was filed beyond the one-year period of limitation prescribed in § 2244(d)(1)(A). That finding, however, does not necessarily require dismissal of the petition as untimely, because the one-year period may be either statutorily or equitably tolled. *See Jones v. Morton*, 195 F.3d 153, 158 (3d Cir.1999).

### B. Statutory Tolling

The AEDPA provides for statutory tolling of the one-year period of limitation as follows:

The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2).

[3] Here, Smith filed a motion for correction of sentence in the Superior Court on April 9, 1998.[FN3] The one-year period of limitation, however, expired on April 23, 1997. *See Burns*, 134 F.3d at 111. Smith's motion for correction of sentence, filed nearly a year after the period of limitation expired, has no tolling effect in this matter. *See Fisher v. Gibson*, 262 F.3d 1135, 1142-43 (10th Cir.2001) (stating that application for postconviction relief filed after the expiration of the one-year period has no tolling effect), *cert. denied*, 535 U.S. 1034, 122 S.Ct. 1789, 152 L.Ed.2d 649 (2002); *Harrigan v. Carroll*, Civ. A. No. 02-197-GMS, 2002 WL 1446695, *2 (D.Del. July 1, 2002)(same).

> FN3. The court's analysis assumes without deciding that Smith's motion for correction of sentence qualifies as an application for postconviction relief under § 2244(d)(2). The court is also aware that Smith filed two prior motions for postconviction relief in the state courts. These two postconviction proceedings concluded prior to April 24, 1996, the effective date of the AEDPA. Applications for postconviction relief that terminated prior to the enactment of the AEDPA are not relevant to the statutory tolling analysis.

*4 In sum, Smith filed his motion for correction of sentence after the one-year period of limitation had expired. Accordingly, the statutory tolling provision does not apply.

### C. Equitable Tolling

[4] The one-year period of limitation is not jurisdictional and is subject to equitable tolling. *Fahy v. Horn*, 240 F.3d 239, 244 (3d Cir.), *cert. denied*, 534 U.S. 944, 122 S.Ct. 323, 151 L.Ed.2d 241 (2001); *Jones*, 195 F.3d at 159; *Miller v. New Jersey State Dep't of Corr.*, 145 F.3d 616, 618 (3d Cir.1998). The doctrine of equitable tolling applies:

only when the principles of equity would make the rigid application of a limitation period unfair. Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights. The petitioner must show that he or she exercised reasonable diligence in investigating and bringing [the] claims. Mere excusable neglect is not sufficient.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                 Page 5
Not Reported in F.Supp.2d, 2002 WL 31005858 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

*Miller,* 145 F.3d at 618-19 (citations omitted). In other words, equitable tolling "may be appropriate if (1) the defendant has actively misled the plaintiff, (2) if the plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." *Jones,* 195 F.3d at 159 (quoting *United States v.. Midgley,* 142 F.3d 174, 179 (3d Cir.1998)).

Here, Smith has failed to articulate any extraordinary circumstances that prevented him from filing his habeas petition in a timely manner. Indeed, he has not provided any reason for his delay in filing the current petition. In short, the court can discern no circumstances which would permit applying the doctrine of equitable tolling. Smith's habeas petition will be dismissed. [FN4]

> FN4. In a letter filed with the court on August 9, 2001, Smith complains that the Delaware Department of Correction has miscalculated his good time credits. (D.I.14.) The court will not consider Smith's complaint in the context of his current habeas petition, which challenges the legality of his convictions and sentences, not the execution of his sentences. If Smith wishes to challenge the execution of his sentences in federal court, he may file an appropriate habeas petition pursuant to 28 U.S.C. § 2254 after he exhausts available state court remedies. The court expresses no opinion on the merits of Smith's challenge to the calculation of his good time credits.

### III. CERTIFICATE OF APPEALABILITY

Finally, the court must determine whether a certificate of appealability should issue. *See* Third Circuit Local Appellate Rule 22.2. The court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When the court denies a habeas petition on procedural grounds without reaching the underlying constitutional claim, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

For the reasons discussed above, Smith's habeas petition was filed beyond the one-year period of limitation. The court cannot conclude that the period should be statutorily or equitably tolled. The court is persuaded that reasonable jurists would not debate otherwise. Smith has, therefore, failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

### IV. CONCLUSION

*5 For the foregoing reasons, IT IS HEREBY ORDERED THAT:

1. Smith's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DISMISSED, and the relief requested therein is DENIED.
2. The court declines to issue a certificate of appealability for failure to satisfy the standard set forth in 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

D.Del.,2002.
Smith v. Snyder
Not Reported in F.Supp.2d, 2002 WL 31005858 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.